1   JOSEPH P. RUSSONIELLO (CABN 44332 )
    United States Attorney
2
    BRIAN J. STRETCH (CABN 163973)
3   Chief, Criminal Division

4   GARTH HIRE (CABN 187330)
    Assistant United States Attorney
5
        1301 Clay Street, Suite 340-S
6       Oakland, California 94612-5217
        Telephone:  (510) 637-3929
7       Facsimile:  (510) 637-3724
        E-Mail:    Garth.Hire@usdoj.gov
8
    Attorneys for Plaintiff
9



10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    OAKLAND DIVISION

13

14   UNITED STATES OF AMERICA,        )   No. 08 - 70504 WDB
                                      )
15           Plaintiff,               )
                                      )   NOTICE OF PROCEEDINGS ON OUT-
16       v.                           )   OF-DISTRICT CRIMINAL CHARGES
                                      )   PURSUANT TO RULES 5(c)(2) AND (3)
17   KEITH WESLEY, JR.,               )   OF THE FEDERAL RULES OF
                                      )   CRIMINAL PROCEDURE
18           Defendant.               )
    _____ )
19

20          Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal

21   Procedure that on or about August 5, 2008, the above-named defendant was arrested based upon

22   an arrest warrant (attached) issued in case number 4:08CR00405 CDP in the Eastern District of

23   Missouri, Eastern Division, upon an Indictment (attached).

24          In that Indictment, the defendant is charged with three counts.  In count one, the

25   defendant is charged with conspiracy to distribute and possess with intent to distribute over one

26   kilogram of heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(i).  In count two, the

27   defendant is charged with conspiracy to distribute and possess with intent to distribute MDMA,

28   in violation of 21 U.S.C. §§ 846, 841(b)(1)(C).  The defendant is also named count ten, a

forfeiture count, seeking the forfeiture of $1,220,000 in drug trafficking proceeds pursuant to 21

U.S.C. § 853(p).

The statutory maximum and mandatory minimum penalties are as follows:

COUNT ONE

Conspiracy to Distribute, and Possess with Intent to Distribute, Heroin

(21 U.S.C. §§ 846, 841(b)(1)(A)(i))

*If 21 U.S.C. § 851 Information alleging prior felony narcotics conviction NOT FILED:*

| | |
|---|---|
| Imprisonment: | Maximum Life Imprisonment<br>Mandatory Minimum 10 Years Imprisonment |
| Fine: | Maximum $4,000,000 |
| Supervised Release: | Maximum Lifetime Supervised Release<br>Mandatory Minimum 5-Year Term of Supervised Release |
| Special Assessment: | $100 |

*If 21 U.S.C. § 851 Information alleging prior felony narcotics conviction(s) FILED:*

| | |
|---|---|
| Imprisonment: | Maximum Life Imprisonment<br>Mandatory Minimum 20 Years Imprisonment (1 prior)<br>Mandatory Minimum Life Imprisonment (2 priors) |
| Fine: | Maximum $8,000,000 |
| Supervised Release: | Maximum Lifetime Supervised Release<br>Mandatory Minimum 10-Year Term of Supervised Release |
| Special Assessment: | $100 |

COUNT TWO

Conspiracy to Distribute, and Possess with Intent to Distribute, MDMA

(21 U.S.C. §§ 846, 841(b)(1)(C))

*If 21 U.S.C. § 851 Information alleging prior felony narcotics conviction NOT FILED:*

| | |
|---|---|
| Imprisonment: | Maximum 20 Years Imprisonment |
| Fine: | Maximum $1,000,000 |
| Supervised Release: | Maximum Lifetime Supervised Release<br>Mandatory Minimum 3-Year Term of Supervised Release |
| Special Assessment: | $100 |

_If 21 U.S.C. § 851 Information alleging prior felony narcotics conviction FILED:_

| | |
|---|---|
| Imprisonment: | Maximum 30 Years Imprisonment |
| Fine: | Maximum $2,000,000 |
| Supervised Release: | Maximum Lifetime Supervised Release<br>Mandatory Minimum 6-Year Term of Supervised Release |
| Special Assessment: | $100 |

Respectfully Submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

Dated:  8/5/08

GARTH HIRE
Assistant United States Attorney

3

SUPPRESSED

# United States District Court

## EASTERN DISTRICT OF MISSOURI

FID # 153591

Warrant # 0844-0703-2078-Z

UNITED STATES OF AMERICA

v.

**WARRANT FOR ARREST**

KEITH WESLEY, JR.,
a/k/a "Cash"

**CASE NUMBER:**

To: The United States Marshal
and any Authorized United States Officer

# 4:08CR00405 CDP

YOU ARE HEREBY COMMANDED to arrest **KEITH WESLEY, JR.**, and bring the defendant forthwith to the nearest magistrate to answer an Indictment charging the defendant with **Count I:** knowingly and intentionally conspiring to distribute and possess with the intent to distribute in excess of one (1) kilogram of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and **Count II:** knowingly and intentionally conspiring to distribute and possess with the intent to distribute methylenedioxymethamphetamine, also known as MDMA and ecstasy, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

| | |
|---|---|
| JAMES WOODWARD | Clerk, United States District Court |
| Name of Issuing Officer | Title of Issuing Officer |
| *[signature]* | July 2, 2008, St. Louis, Missouri |
| Signature of Issuing Officer | Date and Location |
| *[signature]* | by |
| (By) Deputy Clerk | Name of Judicial Officer |

Detention Recommended.

## RETURN

This warrant was received and executed with the arrest of the above-named defendant at _____

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

COPY

ORIGINAL ON FILE WITH
U.S. MARSHAL, EASTERN/MISSOURI

**FILED**

**JUL 0 2 2008**

U. S. DISTRICT COURT
E. DISTRICT OF MO.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | **4:08CR00405  CDP** |
| | ) | |
| ZEUANTRAY VERNER BARRY, | ) | Counts I, II, IV, VII, VIII, IX, X |
| AKA "Zoo;" | ) | |
| ARTWON L. ROBINSON, | ) | Counts I, II, III, IV; V, VI, X |
| AKA "Twon;" | ) | |
| TROY PIERRE McDONALD, | ) | Count I, X |
| AKA "TP;" | ) | |
| KEITH WESLEY, JR., | ) | Counts I, II, X |
| AKA "Cash;" | ) | |
| JAMAL JESUS JUAN SWAIN, | ) | Counts I, X |
| AKA "J-Stone," "Stone;" | ) | |
| JAMES LEE ECHOLS, II, | ) | Counts I, II, IV |
| AKA "Chris Jones;" | ) | |
| RALPH McNEAL, | ) | Counts I, IV, VII |
| AKA "Bud;" | ) | |
| ANDRENOS LAMAR POWELL, | ) | Counts II, III, IV |
| AKA "Draino," "Drain;" | ) | |
| SHAWN LAMONT WHITE, | ) | Counts II, III |
| AKA "BG;" | ) | |
| MELVIN DARNELL CURTIS, | ) | Count II |
| AKA "Mel," "Mel Dog;" | ) | |
| LARRY DARNELL SHELTON, JR., | ) | Count II |
| AKA "Mike Larry," "The Clown;" | ) | |
| BAMBOYE A. BOWEN, | ) | Count III |
| AKA "Ye;" | ) | |
| VIRGIL PRUITT, | ) | Count III |
| AKA "Virg;" | ) | |
| CEDRIC ARNOLD RIGGINS, JR., | ) | Count III |
| AKA "Rick," "Slick Rick;" | ) | |
| BRANDON EWING, | ) | Count III |
| AKA "B-12;" | ) | |
| KOVAR DEMOND MOORE, | ) | Count IV, X |
| AKA "Co-Ball," "Kovy;" and | ) | |
| BRIAN ADOLPHUS CHASE; | ) | Count VIII |
| | ) | |
| Defendants. | ) | |

## COUNT I

A.    The Grand Jury charges that:

Beginning on or about January, 2005, and continuing to the date of this Indictment, with the exact dates unknown, in the City and County of St. Louis, Missouri, within the Eastern District of Missouri and elsewhere,

**ZEUANTRAY VERNER BARRY,**
**ARTWON L. ROBINSON,**
**TROY PIERRE McDONALD,**
**KEITH WESLEY JR.,**
**JAMAL JESUS JUAN SWAIN,**
**JAMES LEE ECHOLS, II,**
**RALPH McNEAL,**

the defendants herein, did knowingly and intentionally conspire, combine, confederate and agree with each other and with other persons known and unknown to this Grand Jury, to commit offenses against the United States, to wit: to knowingly and intentionally distribute and possess with the intent to distribute a controlled substance, to wit: heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

B.    <u>MANNER AND MEANS OF THE CONSPIRACY</u>

1.    It was part of this drug-trafficking conspiracy that Troy McDonald of San Francisco, California; Keith Wesley of Oakland, California; and Jamal Swain of Las Vegas, Nevada, were the organizers, leaders and sources of supply of a heroin-trafficking organization operating a large distribution network in a multi-state region which included the Eastern District of Missouri.

2.    It was further part of the drug-trafficking conspiracy that McDonald, Wesley and Swain utilized telephones to communicate with underlings and set up distribution hubs in various cities, including St. Louis, Missouri.

3.    It was further part of the drug-trafficking conspiracy that Zenantray Barry and Artwon Robinson received the heroin and were the primary hub distributors in the St. Louis metropolitan area, distributing multi-kilogram quantities of heroin.

4.    It was further part of the drug-trafficking conspiracy that James Echols served as an interstate courier and facilitator at Barry's direction, transporting heroin from California to St. Louis.

5.    It was further part of the drug-trafficking conspiracy that Ralph McNeal was a facilitator for the organization which included accompanying Barry on heroin pickups.

6.    It was further part of the drug-trafficking conspiracy that the conspirators utilized telephones to communicate to arrange and direct the shipment and distribution of multi-kilogram quantities of heroin in St. Louis, Missouri.

7.    It was further part of the drug-trafficking conspiracy that the conspirators utilized telephones to direct the collection of money derived from the sale of heroin and direct the shipment of these monies back to California.

All in violation of Title 21, United States Code, Sections 846; and

The quantity of controlled substance involved in the offense was in excess of one kilogram of a mixture or substance containing heroin, thereby making the offense punishable under Title 21, United States Code, Section 841(b)(1)(A)(I).

3

## COUNT II

A.    The Grand Jury further charges that:

Beginning on or about January, 2005, and continuing to the date of this Indictment, with the exact dates unknown, in the City and County of St. Louis, within the Eastern District of Missouri and elsewhere,

**ZEUANTRAY VERNER BARRY,
ARTWON L. ROBINSON,
KEITH WESLEY JR.,
JAMES LEE ECHOLS, II,
ANDRENOS LAMAR POWELL,
SHAWN LAMONT WHITE,
MELVIN DARNELL CURTIS,
LARRY DARNELL SHELTON, JR.,**

the defendants herein, did knowingly and intentionally conspire, combine, confederate and agree with each other and with other persons known and unknown to this Grand Jury, to commit offenses against the United States, to wit: to knowingly and intentionally distribute and possess with the intent to distribute a controlled substance, to wit: 3,4-methylenedioxymethamphetamine, also known as MDMA and ecstasy, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841 (a) (1).

B.    **MANNER AND MEANS OF THE CONSPIRACY**

1.    It was part of this drug-trafficking conspiracy that defendant Keith Wesley was the organizer, leader, and source of supply of an MDMA-trafficking organization, operating a large distribution network in a multi-state region which included the Eastern District of Missouri.

2.    It was further part of the MDMA-trafficking conspiracy that Wesley utilized telephones to communicate with underlings and set up distribution hubs in various cities including St. Louis, Missouri.

4

3.    It was further part of the MDMA-trafficking conspiracy that Zeuantray Barry and Artwon Robinson were the primary hub distributors in the St. Louis metropolitan area, distributing multi-thousand tablet quantities of MDMA.

4.    It was further part of the MDMA-trafficking conspiracy that Andrenos Powell, Shawn White, Melvin Curtis, and Larry Shelton were provided MDMA by Barry and Robinson and distributed that MDMA in the St. Louis metropolitan area.

5.    It was further part of the drug-trafficking conspiracy that James Echols served as a interstate courier and facilitator at Barry's direction, transporting MDMA from California to St. Louis.

6.    It was further part of the drug-trafficking conspiracy that the conspirators utilized telephones to communicate, arrange, and direct the shipment and distribution of multi-thousand tablet quantities of MDMA to St. Louis, Missouri.

7.    It was further part of the drug-trafficking conspiracy that the conspirators utilized telephones to direct the collection of money derived from the sale of MDMA and direct the shipment of these monies back to California.

All in violation of Title 21, United States Code, Sections 846, and punishable under Title 21, United States Code, Section 841(b)(1)(C).

## COUNT III

A.    The Grand Jury further charges that:

Beginning on or about January, 2005, and continuing to the date of this Indictment, with the exact dates unknown, in the City and County of St. Louis, Missouri, within the Eastern District of Missouri and elsewhere,

**ARTWON L. ROBINSON,
ANDRENOS LAMAR POWELL,
SHAWN LAMONT WHITE,
BAMBOYE A. BOWEN,
VIRGIL PRUITT,
CEDRIC ARNOLD RIGGINS, JR.,
BRANDON EWING,**

the defendants herein, did knowingly and intentionally conspire, combine, confederate and agree

with each other and with other persons known and unknown to this Grand Jury, to commit

offenses against the United States, to wit: to knowingly and intentionally distribute and possess

with the intent to distribute a controlled substance, to wit: cocaine and cocaine base (crack),

Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

**B.    MANNER AND MEANS OF THE CONSPIRACY**

1.    It was part of this drug-trafficking conspiracy that Artwon Robinson was the

organizer and leader of a cocaine- and cocaine base-trafficking organization, operating a large

distribution network in the greater St. Louis, Missouri, metropolitan area.

2.    It was further part of the cocaine- and cocaine base-trafficking conspiracy that

Robinson utilized telephones to communicate with underlings to set up the distribution of

cocaine and cocaine base in St. Louis, Missouri.

3.    It was further part of this cocaine- and cocaine base-trafficking conspiracy that

Robinson and Shawn White were the primary distributors in the St. Louis Metropolitan area,

distributing multi-ounce quantities of cocaine and cocaine base.

4.    It was further part of this cocaine- and cocaine base-trafficking conspiracy that

Andrenos Powell, Bamboye Bowen, Virgil Pruitt, Cedric Riggins, and Brandon Ewing received

6

cocaine and cocaine base from Robinson and White and distributed it in the St. Louis metropolitan area.

5.     It was further part of this drug-trafficking conspiracy that the defendants utilized telephones to communicate to arrange and direct the distribution of multi-ounce quantities of cocaine and cocaine base throughout the St. Louis metropolitan area.

6.     It was further part of the drug-trafficking conspiracy that the defendants utilized telephones to direct the collection of money derived from the sale of cocaine and cocaine base and direct the shipment of these monies back to California.

All in violation of Title 21, United States Code, Sections 846; and

The quantity of controlled substance involved in the offense was in excess of 50 grams of a mixture or substance containing cocaine base (crack), thereby making the offense punishable under Title 21, United States Code, Section 841(b)(1)(A)(iii).

## COUNT IV

A.     The Grand Jury further charges that:

On or about January, 2005, and continuing to the date of this Indictment, with the exact dates unknown, in the City and County of St. Louis, Missouri, within the Eastern District of Missouri, and elsewhere,

**KOVAR DEMOND MOORE,
ZEUANTRAY VERNER BARRY,
ARTWON L. ROBINSON,
JAMES LEE ECHOLS, II,
RALPH McNEAL,
ANDRENOS LAMAR POWELL,**

the defendants herein, did knowingly and intentionally conspire, combine, confederate and agree with each other and with other persons known and unknown to this Grand Jury, to commit

7

offenses against the United States, to wit: to knowingly and intentionally distribute and possess

with the intent to distribute a controlled substance, to wit: marijuana, a Schedule I controlled

substance, in violation of Title 21, United States Code, Section 841(a)(1).

B.      **MANNER AND MEANS OF THE CONSPIRACY**

    1.      It was part of the drug-trafficking conspiracy that Kovar Moore of Corona,

California, was the organizer, leader, and source of supply of this marijuana-trafficking

organization, operating a large distribution network in a multi-state region which included the

Eastern District of Missouri.

    2.      It was further part of the marijuana-trafficking conspiracy that Moore utilized

telephones to communicate with Zeuantray Barry and Artwon Robinson who were the primary

distributors of the marijuana received from Moore.

    3.      It was further part of the marijuana-trafficking conspiracy that Barry and

Robinson provided marijuana to others to be distributed in the St. Louis metropolitan area.

    4.      It was further part of the marijuana-trafficking conspiracy that Ralph McNeal and

Andrenos Powell were marijuana distributors in the St. Louis metropolitan area for Barry and

Robinson.

    5.      It was further part of the drug-trafficking conspiracy that James Echols served as a

interstate courier and facilitator at Barry's direction, transporting marijuana from California to the

Eastern district of Missouri.

    6.      It was further part of the marijuana-trafficking conspiracy that the conspirators

utilized telephones to communicate to arrange and direct the shipment and distribution of multi-

pound quantities of marijuana to St. Louis, Missouri.

7.     It was further part of the drug-trafficking conspiracy that the conspirators utilized telephones to direct the collection of money derived from the sale of marijuana and direct the shipment of these monies back to California.

All in violation of Title 21, United States Code, Sections 846;

And, the amount of controlled substance involved in the offense was in excess of 100 kilograms of a mixture or substance containing marijuana, thereby making the offense punishable under 841(b)(1)(B)(vii).

### COUNT V

The Grand Jury further charges that:

On or about December 04, 2006, in the City of St. Louis, Missouri, within the Eastern District of Missouri,

### ARTWON L. ROBINSON,

the defendant herein, did knowingly and intentionally distribute a controlled substance, to wit: heroin, a Schedule I controlled substance,

In violation of Title 21, United States Code, Section 841(a)(1), and punishable under Section 841(b)(1)(C).

### COUNT VI

The Grand Jury further charges that:

On or about December 12, 2006, in the City of St. Louis, Missouri, within the Eastern District of Missouri,

### ARTWON L. ROBINSON,

the defendant herein, did knowingly and intentionally distribute a controlled substance, to wit:

heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), and punishable under Title

21, United States Code, Section 841(b)(1)(C).

## COUNT VII

The Grand Jury further charges that:

On or about August 15, 2007, in St. Louis County, Missouri, within the Eastern District

of Missouri,

### ZEUANTRAY VERNER BARRY and
### RALPH McNEAL,

the defendants herein, did knowingly and intentionally possess with the intent to distribute a

controlled substance, to wit:  heroin, a Schedule I controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and Title 18, United

States code, Section 2;

And the amount of controlled substance involved in the offense was in excess of one

kilogram of a mixture or substance containing heroin, making the offense punishable under Title

21, United States Code, Section 841(b)(1)(A)(I).

## COUNT VIII

A. The Grand Jury further charges that:

Beginning on or about January, 2005 and continuing to the date of this Indictment, with

the exact dates unknown, in the City of St. Louis, Missouri, within the Eastern District of

Missouri and elsewhere,

10

**ZEUANTRAY VERNER BARRY and
BRIAN ADOLPHUS CHASE,**

the defendants herein, did knowingly and intentionally conspire, combine, confederate, and agree

with each other and with others both known and unknown to the Grand Jury, to commit certain

offenses against the United States, to wit:

(1) to knowingly and willfully conduct and attempt to conduct financial

transactions involving the use of financial institutions, which in some way or degree affected

interstate commerce;

(2) which in fact involved the proceeds of a specified unlawful activity, to wit:

conspiracy to distribute and possess with intent to distribute heroin, MDMA, and marijuana as

charged in Counts I, II, and IV;

(3) knowing that the property involved in said transactions represented the

proceeds of some form of unlawful activity; and

(4) with intent to promote the carrying on of said specified unlawful activity and

knowing that the transactions were designed in whole or in part to conceal or disguise the nature,

location, source, and control of the proceeds of the aforesaid specified unlawful activity.

In violation of Title 18, United States Code, Section 1956(a)(1)(A)(I) and B(I).

B. **MANNER AND MEANS OF THE CONSPIRACY**

The defendants and conspirators accomplished and attempted to accomplish the objects

of the money-laundering conspiracy in the following manner and through the following means:

11

1.   It was part of said money-laundering conspiracy that in October, 2005, Chase purchased a 2001 BMW 330ci using $6,000 in United States currency supplied by Barry and obtained financing in his name in order to conceal Barry's true ownership of the vehicle.

2.   It was further part of said conspiracy that Chase titled and maintained the 2001 BMW 330ci in his name with the Missouri Department of Revenue in order to conceal Barry's true ownership of the vehicle.

3.   It was further part of said conspiracy that Barry was responsible for making monthly payments to United Auto Credit Corporation for the 2001 BMW 330ci that was registered and titled in the name Brian Chase.

4.   It was further part of said conspiracy that in June, 2008, Western Union wire transfer receipts in the name of Chase were located in the personal records of Barry during the execution of a court-authorized search warrant at Barry's primary residence.  These receipts were made payable to United Auto Credit, the lender for the 2001 BMW 330ci.

5.   It was also part of said money-laundering conspiracy that in January, 2006, Chase purchased a 2006 Chevrolet Monte Carlo SS using $9,000 in United States currency supplied by Barry and obtained financing in his name for the benefit of Barry.

6.   It was further part of said conspiracy that Chase titled and maintained the 2006 Chevrolet Monte Carlo SS in his name with the Missouri Department of Revenue in order to conceal Barry's true ownership of the vehicle.

7.   It was further part of said conspiracy that Barry was responsible for making monthly payments to General Motors Acceptance Corporation (GMAC) for the 2006 Chevrolet Monte Carlo SS that was registered and titled in the name Brian Chase.

8.  It was further part of said conspiracy that in June, 2008, Western Union wire transfer receipts in the name of Brian Chase were located in the personal records of Barry during the execution of a court-authorized search warrant at Barry's primary residence.  These receipts were made payable to GMAC, the lien holder for the 2006 Chevrolet Monte Carlo SS.

9.  It was further part of said money-laundering conspiracy that in September, 2005, Barry purchased real property located at 1905 Grape Ave., St. Louis, Missouri, 63136, using funds derived from the sale of narcotics.

10.  It was further part of said conspiracy that in September, 2006, Chase secured financing and purchased the residence located at 1905 Grape Ave., St. Louis, Missouri, 63136, from Barry in order for Barry to obtain $87,300 in equity and conceal Barry's true ownership of the real property.

11.  It was further part of said conspiracy that despite selling the residence to Chase, Barry maintained control of the real property and was responsible for providing the funds necessary for the monthly payment to the lender.

12.  It was further part of said conspiracy that in June, 2008, Western Union wire transfer receipts in the name of Brian Chase were located in the personal records of Barry during the execution of a court-authorized search warrant at Barry's primary residence.  These receipts were made payable to OCWEN, the mortgage lender for the real property located at 1905 Grape Ave. in St. Louis.

13.  It was further part of said conspiracy that in January, 2007, Chase secured financing and purchased the real property located at 12534 Questover Court, Creve Coeur, Missouri, 63141, for the benefit of Barry.

13

14.    It was further part of said conspiracy that in order to secure financing of $585,000 for the purchase of the real property located at 12534 Questover Court, Chase submitted false loan documentation and wage information provided by a company owned and operated by Barry and Barry's associate, James Echols.

15.    It was further part of said conspiracy that title to the real property located at 12534 Questover Court, was held in the name of Chase in order to conceal Barry's true ownership of the property.

16.    It was further part of said conspiracy that in June, 2008, loan documentation in the name of Brian Chase was located in the personal records of Barry during the execution of a court-authorized search warrant at Barry's primary residence.

17.    It was further part of said conspiracy that Barry maintained control of the real property located at 12534 Questover Court, and was responsible for providing the funds necessary to pay the monthly mortgage payments to Countrywide Home Loans.

## COUNT IX

The Grand Jury further charges that:

Beginning on or about January, 2005, and continuing to the date of this Indictment, with the exact dates unknown, in the City of St. Louis, Missouri, within the Eastern District of Missouri and elsewhere,

### ZEUANTRAY VERNER BARRY,

the defendant herein, did knowingly and intentionally:

(1)  conduct and attempt to conduct financial transactions involving the use of financial institutions, which in some way or degree affected interstate commerce, as follows:

14

(a)    On May 2, 2005, Barry completed payment for the purchase of Units A, B, and D of 745 Walton Ave., St. Louis, Missouri.

(b)    Barry provided Lester McKinley with $18,000 in United States currency, instructing McKinley to purchase cashier's checks made payable to US Title.

(c)    McKinley purchased two cashier's checks in the amount of $9,000 each.

(d)    The two cashier's checks were remitted to US Title as partial payment for Unit A of 745 Walton Ave., St. Louis, Missouri, on April 14, 2005.

(e)    In 2005, Barry provided McKinley with $9,000 in United States currency, instructing McKinley to purchase a cashier's check made payable to US Title.

(f)    Barry also provided McKinley with $3,000 in United States currency, instructing McKinley to purchase a cashier's check made payable to US Title.

(g)    On April 14, 2005, and May 11, 2005, McKinley purchased cashier's checks for $9,000 and $3,000.

(h)    The two cashier's checks were remitted to US Title as partial payment for Unit B of 745 Walton Ave., St. Louis.

(I)    Also in 2005, Barry instructed Andrea Topps-Gilby to purchase a cashier's check made payable to US Title in the amount of $30,000.

(j)    Topps-Gilby purchased a cashier's check for $30,000 on April 14, 2005.

(k)    The cashier's check was remitted to US Title as partial payment for Unit D of 745 Walton Ave., St. Louis, Missouri.

15

(l)     Over the course of four to six weeks, Barry repaid Topps-Gilby in small increments of United States currency totaling the amount of $30,000 plus an additional $300 to $400 for her assistance in purchasing the cashier's check.

(m)     On December 1, 2005, real property located at 4627 Elmbank Ave., St. Louis, Missouri, 63115, was purchased in the name of Zeuantray Barry for $27,500 using the following cashier's checks:

(i)     On or about December 1, 2005, Lester McKinley purchased a cashier's check for $4,000 made payable to First Financial Title Company.

(ii)     On or about December 1, 2005, Chantea Cook purchased a cashier's check for $8,000 made payable to First Financial Title Company.

(iii)     On or about December 1, 2005, McKinley purchased a cashier's check for $4,000 made payable to First Financial Title Company.

(iv)     On or about December 1, 2005, an unidentified person purchased a cashier's check for $2,928.87 made payable to First Financial Title Company.

(v)     On or about December 1, 2005, Trans Continental Transportation purchased a cashier's check for $8,000 made payable to First Financial Title Company.

(2) which in fact involved the proceeds of a specified unlawful activity, to wit: conspiracy to distribute and possess with intent to distribute heroin, MDMA, and marijuana as charged in Counts I, II, IV;

(3) knowing that the property involved in said transactions represented the proceeds of some form of unlawful activity; and

16

(4) with intent to promote the carrying on of said specified unlawful activity and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, and control of the proceeds of the aforesaid specified unlawful activity.

In violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

### COUNT X
### (FORFEITURE)

The Grand Jury further charges that:

1.      The allegations of Counts I, II, III, and IV of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 21, United States Code, Section 853.

2.      The property, real and personal of defendants,

**ZEUANTRAY VERNER BARRY,**
**ARTWON ROBINSON,**
**TROY PIERRE McDONALD,**
**KEITH WESLEY, JR.**
**JAMAL JESUS JUAN SWAIN,**
**KOVAR DEMOND MOORE,**

(a) constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of the violation of law set out in Counts I, II, III, IV of this Indictment, and

(b) used, or intended to be used, in any manner or part to commit or to facilitate the commission of such violations, is property subject to forfeiture pursuant to Title 21, United States Code, Section 853(a).

3. Subject to forfeiture is approximately $1,220,000 in United States currency in that such sum in the aggregate is property constituting or derived from any proceeds the defendants

17

obtained directly or indirectly as a result of the offense alleged in Counts I, II, III, and IV. It is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any property of the defendant up to the value of $1,220,000.

4. Specifically subject to forfeiture is property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the offense alleged in Counts I, II, III, and IV. These include, but are not limited to:

a. 745 Walton Ave, Unit A, St. Louis, MO 63108; legal description: C B 3762 N Walton Ave. Enright Condo I, Unit G-1, parcel number 37620507500;

b. 745 Walton Ave, Unit B, St. Louis, MO 63108; legal description: C B 3762 N Walton Ave. Enright Condo I, Unit G-2, parcel number 37620507510;

c. 745 Walton Ave, Unit D, St. Louis, MO 63108; legal description: C 3762 N Walton Ave. Enright Condo I, Unit G-4, parcel number 37620507530;

d. the commercial facility at 3901 St. Ferdinand Ave., St. Louis, MO 63113; legal description: C.B. 3642 Vandeventer, 120 Ft X 55 Ft., Murphy 2nd Addn., Blk 1 Lots 1, 2, & E-3, parcel number 36420000400

e. 3150 Rosanna Street, Las Vegas, NV 89117; legal description: that portion of the Southeast Quarter (SE-1/4) of the Southeast Quarter (SE-1/4) of Section 10 Township 21 South, Range 60 East, M.D.B. & M., more particularly described as: Parcel Three (3), as shown by map thereof on file 47 of Plats, page 25, in the office of the county recorder of Clark County, Nevada, and recorded July 23, 1985, as document No. 2112751, Official records, Clark County, Nevada.; and currently valued at $1,100,000.

18

07/25/2008  10:31     916508762729                                          PAGE  21/22

JUL-24-2008 16:38  FROM:ENFORCEMENT GROUP 37 314-538-5078        TO:86508762729        P:11/12

  Jul 23 2008 10:20AM  USMS ISD E/MO                3145397149              p.24

   f.  A security deposit in the amount of $130,000 in escrow at Trump International Hotel and Tower on the Las Vegas Strip, for the purchase of condominium number 3920.

 All in violation of Title 21, United States Code, Section 853.


        A TRUE BILL.

        FOREPERSON



CATHERINE L. HANAWAY
United States Attorney


ANTOINETTE DECKER  #48747
Assistant United States Attorney



19